1

2

3

4

5

6                                   UNITED STATES DISTRICT COURT

7                                   EASTERN DISTRICT OF CALIFORNIA

8

9    ELMER JOEL M. C.,                              No.  1:25-cv-01622-KES-CDB (HC)

10                         Petitioner,

11         v.                                        ORDER GRANTING PETITION FOR WRIT
                                                     OF HABEAS CORPUS
12   MINGA WOFFORD, Mesa Verde ICE                   Doc. 1
     Processing Center Facility Administrator;
13   SERGIO ALBARRAN, Acting Field Office
     Director of the San Francisco Immigration
14   and Customs Enforcement Office; TODD
     M. LYONS, Acting Director of United
15   States Immigration and Customs
     Enforcement; KRISTI NOEM, Secretary of
16   the United States Department of Homeland
     Security; PAMELA BONDI, Attorney
17   General of the United States,

18                         Respondents.

19

20         This habeas action concerns the re-detention of petitioner Elmer Joel M. C., a noncitizen

21   who was detained and released in 2018 then recently re-detained.[1]  For the reasons explained

22   below, the petition for writ of habeas corpus is granted.

23   / / /

24   / / /

25   _____

26   [1] As recommended by the Committee on Court Administration and Case Management of the
     Judicial Conference of the United States, the Court omits petitioner's full name, using only his
27   first name and last initial, to protect sensitive personal information.  *See* Memorandum re: Privacy
     Concern Regarding Social Security and Immigration Opinions, Committee on Court
28   Administration and Case Management, Judicial Conference of the United States (May 1, 2018),
     https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

                                                     1

1

**I.        Background**[2]

2          Petitioner is a 40-year-old asylum-seeker from Guatemala who entered the United States

3   in 2018.  Doc. 1 at ¶ 28; Doc. 1-1, M.C. Decl. at ¶¶ 1–2.  Immigration authorities detained

4   petitioner and his daughter on December 17, 2018, near Antelope Wells, New Mexico.  Doc. 1 at

5   ¶ 28; Doc. 1-1, M.C. Decl. at ¶¶ 1–2.  On December 24, 2018, immigration officials provided

6   petitioner with a notice to appear for removal proceedings.  Doc. 1-1, Ex. C.  In the notice to

7   appear, immigration officials designated him as "an alien present in the United States who has not

8   been admitted or paroled"; they did not designate him as an "arriving alien."  *Id.*  On December

9   24, 2018, immigration officials released petitioner on his own recognizance pending those

10  removal proceedings.  Doc. 1-1, Ex. B.  His daughter was also released.  Doc. 1 at ¶ 28.

11  Immigration officials provided petitioner with an order of release on recognizance which stated

12  that he was being released "in accordance with" 8 U.S.C. § 1226, provided that he comply with

13  certain conditions.  Doc. 1-1, Ex. B.

14         The regulations that authorize immigration authorities to release a noncitizen on his own

15  recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such

16  release would not pose a danger to property or persons" and that the noncitizen is "likely to

17  appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  "Release [therefore] reflects a

18  determination by the government that the noncitizen is not a danger to the community or a flight

19  risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia*

20  *for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

21         Following his release, petitioner established a life in Oakland, California with his

22  daughter.  Doc. 1-1, M.C. Decl. at ¶ 4.  They were also joined by his wife and his younger son.

23  *Id.*  Petitioner was granted work authorization and worked in construction to provide for his

24  family.  *Id.* ¶ 8.  Petitioner's wife gave birth to their third child in 2025.  *See id.* ¶ 9.

25         Petitioner sought relief in his removal proceedings by filing a petition for asylum.  Doc. 1

26

---

[2] The facts set out in this section come from petitioner's verified petition and other evidence in
27  the record.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus]
     as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,*
28  833 F.2d 196, 197–98 (9th Cir. 1987)).

at ¶ 31.  His case was consolidated with his family's cases, and their final hearing in immigration court was scheduled for February 2026.  Doc. 1-1, M.C. Decl. at ¶ 6.  Respondents do not dispute petitioner's assertions that he complied with all conditions of his release and attended all his hearings in immigration court.[3]  Doc. 1 at ¶ 31; *see* Doc. 7.

On October 1, 2025, petitioner was arrested by ICE agents while leaving his home. Doc. 1-1, M.C. Decl. at ¶ 15.  Petitioner is now detained at Mesa Verde ICE Processing Center. *Id.* ¶ 16.  Following his detention, his removal proceedings were separated from his family's immigration proceedings.  *Id.* ¶ 6.

Several months before petitioner's detention, the Department of Homeland Security ("DHS") issued a policy which provides that noncitizens who entered the United States without admission or parole are "applicants for admission" and therefore subject to 8 U.S.C. § 1225(b), a statutory provision which mandates detention.  Doc. 1 at ¶ 75.  In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals agreed with DHS's new reading of the statute.  Doc. 1 at ¶ 76.

## II.    Procedural History

On November 21, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that his detention violated the Due Process Clause and the Immigration and Nationality Act.  The Court issued a briefing schedule and informed the parties that it intended to rule directly on the petition.  Doc. 4.  Respondents filed an opposition on December 3, 2025, arguing that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  Doc. 7.

## III.   Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in

---

[3] The petition states that petitioner was arrested by Oakland police in March 2024 but never charged with a crime.  Doc. 1 at ¶ 33.  Respondents do not allege that this was a violation of petitioner's release terms, nor do they argue this arrest as a basis to re-detain petitioner. *See* Doc. 7.

3

1    custody upon the legality of that custody, and . . . the traditional function of the writ is to secure

2    release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

3    corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

4    Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has

5    served as a means of reviewing the legality of Executive detention, and it is in that context that its

6    protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a

7    district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v.*

8    *Davis*, 533 U.S. 678, 687 (2001).

9        **IV.    Discussion**

10           Petitioner argues that DHS's new policy and the BIA's decision in *Matter of Yajure*

11   *Hurtado*, 29 I&N Dec. 216 (BIA 2025), are based on an erroneous interpretation of the statute,

12   and that because he has no opportunity for a bond hearing under those authorities, his due process

13   rights have been violated.  *See* Doc. 1 at ¶¶ 41–84.  Petitioner's due process claim is analyzed "in

14   two steps: the first asks whether there exists a protected liberty interest under the Due Process

15   Clause, and the second examines the procedures necessary to ensure any deprivation of that

16   protected liberty interest accords with the Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-

17   TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*

18   *Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

19                  **1.   Petitioner Possesses a Protected Liberty Interest.**

20           A protected liberty interest may arise from a conditional release from physical restraint.

21   *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to

22   arrest and detain an individual, a protected liberty interest under the Due Process Clause may

23   entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process

24   requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)

25   (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole

26   context).  To determine whether a specific conditional release rises to the level of a protected

27   liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in

28   the case before them with the liberty interest in parole as characterized by *Morrissey*."  *Gonzalez-*

4

1    *Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation
2    omitted).

3          In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide
4    range of things open to persons" who have never been in custody or convicted of any crime,
5    including to live at home, work, and "be with family and friends and to form the other enduring
6    attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly
7    subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring
8    and seeking authorization to work and travel, his "condition is very different from that of
9    confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole
10   will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole
11   undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a
12   parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

13         Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar.
14   Among other things, it allowed him to live and work in his community and to provide for his
15   family, while seeking relief in his removal proceedings and complying with the terms of his
16   release.

17         Respondents argue that the government's prior conditional release of petitioner pursuant
18   to 8 U.S.C. § 1226(a) should not prevent them from re-evaluating that decision and subjecting
19   petitioner to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *See* Doc. 7 at 2.
20   Respondents argue that section 1225(b)(2)(A) applies because petitioner fits the statutory
21   definition of an "applicant for admission." *See id.* The argument that § 1225(b)(2) applies to
22   someone in petitioner's circumstances is incorrect for the reasons set forth in *Sharan S. v.*
23   *Chestnut*, No. 1:25-CV-01427-KES-SKO (HC), 2025 WL 3167826, at *4–8 (E.D. Cal. Nov. 12,
24   2025).

25         Moreover, even if respondents were correct that section 1225(b)(2)(A) could apply to
26   petitioner, the government previously represented to him, in releasing him on his own
27   recognizance, that he had been released pursuant to section 1226(a). Doc. 1-1, Ex. B. Under
28   section 1226(a), petitioner would be entitled to a bond hearing, and any custody redetermination

1    would have to be based on whether petitioner is "a threat to national security, a danger to the

2    community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N.

3    Dec. 37, 40 (BIA 2006). Petitioner's prior release pursuant to section 1226(a) thus created a

4    reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight

5    risk or danger. *Cf. Perry v. Sindermann*, 408 U.S. 593, 601–03 (1972) (reliance on governmental

6    representations may establish a legitimate claim of entitlement to a constitutionally-protected

7    interest). As another court recognized in this context, once the government "elect[s] to proceed

8    . . . under § 1226, [it] cannot [] reverse course and institute § 1225 . . . proceedings." *Ramirez*

9    *Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025).

10   Even if section 1225(b) *did* apply, petitioner has a protected liberty interest based on the

11   government's prior representation to him that his release was pursuant to section 1226, combined

12   with the nearly six years he spent at liberty while relying on that representation.

13          The Court finds that petitioner has a protected liberty interest in his release. *See*

14   *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,

15   2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]

16   is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

17   1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

18   been released have a strong liberty interest). The Court must therefore determine what process is

19   due before the government may terminate his liberty.

20                                **2.  *Mathews* Factors**

21          Due process "is a flexible concept that varies with the particular situation." *Zinermon v.*

22   *Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be

23   evaluated using the *Mathews v. Eldridge* factors:

24              First, the private interest that will be affected by the official action;
                second, the risk of an erroneous deprivation of such interest through
25              the procedures used, and the probable value, if any, of additional or
                substitute procedural safeguards; and finally, the government's
26              interest, including the function involved and the fiscal and
                administrative burdens that the additional or substitute procedural
27              requirement would entail.

28

                                          6

1   *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872

2   F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

3       Turning to the first factor, petitioner has a significant private interest in remaining free

4   from detention.  "Freedom from imprisonment—from government custody, detention, or other

5   forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."

6   *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for nearly six

7   years in reliance on the government's previous representations that he was being released pending

8   his removal proceedings.  His detention denies him that freedom.

9       Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the

10   petitioner] has not received any bond or custody redetermination hearing."  *A.E. v. Andrews*, No.

11   1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil

12   immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a

13   noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690;

14   *Padilla*, 704 F. Supp. 3d at 1172.  Petitioner has no criminal history and respondents do not

15   dispute that he complied with all terms of his release.  *See* Doc. 7.  As there have been no

16   procedural safeguards to determine if petitioner's re-detention is justified, "the probable value of

17   additional procedural safeguards, i.e., a bond hearing, is high."  *A.E.*, 2025 WL 1424382, at *5.

18       Third, although the government has a strong interest in enforcing the immigration laws,

19   the government's interest in detaining petitioner without a hearing is "low."  *Ortega v. Bonnar*,

20   415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95

21   (E.D. Cal. 2025).  In immigration court, custody hearings are routine and impose a "minimal"

22   cost.  *Doe*, 2025 WL 691664, at *6.  "If the government wishes to re-arrest [petitioner] at any

23   point, it has the power to take steps toward doing so; but its interest in doing so without a hearing

24   is low."  *Ortega*, 415 F. Supp. 3d at 970.

25       On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which

26   should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due

27   Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived

28   of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542

1   (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127

2   ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

3   kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has

4   held that Due Process requires a pre-deprivation hearing before those released on parole from a

5   criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The

6   same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.

7         Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-*

8   deprivation hearing [was] required to satisfy due process."  *Guillermo M. R.*, 2025 WL 1983677,

9   at *9.  Numerous district courts have reached a similar conclusion.  *See, e.g.*, *id.*; *Garcia*, 2025

10   WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Doe*,

11   787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D.

12   Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D.

13   Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal.

14   Aug. 23, 2020).

15      **V.**    **Conclusion and Order**

16         Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED.  Respondents

17   are ORDERED to release petitioner immediately.  Respondents are ENJOINED AND

18   RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing

19   evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a

20   flight risk or danger to the community such that his physical custody is legally justified.

21         The Clerk of Court is directed to close this case and enter judgment for petitioner.

22

23   IT IS SO ORDERED.

24     Dated:   <u>December 6, 2025</u>         <u>                        </u>

25                                      UNITED STATES DISTRICT JUDGE

26

27

28